IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

In re

Beth Elaine Moore,                                          Case No. 09-40229

    Debtor,                                               Chapter 7


Beth Elaine Moore,

    Plaintiff,

v.                                                          A.P. No. 09-4017

Wells Fargo Bank d/b/a/ Wells Fargo
Home Mortgage, Inc.,

    Defendant.


### ORDER GRANTING MOTION FOR SUMMARY JUDGEMENT

    This matter comes before the Court upon the motion of the Defendant, Wells Fargo Bank d/b/a/ Wells Fargo Home Mortgage, Inc. ("Wells Fargo"), for summary judgment. In this case, the Debtor/Plaintiff alleges that the mortgage loan that she obtained through Wells Fargo was unconscionable because the method of calculating her income that Wells Fargo used when underwriting her loan unfairly inflated that income and resulted in a loan that was too large for her to service. The issues underlying the motion have been briefed and argued orally and the Court finds them ripe for review.

## FACTUAL BACKGROUND

The Debtor/Plaintiff has an Associate's Degree in Office Administration. Prior to obtaining the loan at issue in this case, she worked for many years in the medical field, dealing with, among other things accounts receivable and billing. On November 21, 2008, the Plaintiff entered into a mortgage loan transaction with Wells Fargo for the purpose of refinancing her home and consolidating some of her credit card debt. The Plaintiff refinanced her prior mortgage through an FHA-approved loan from Wells Fargo, and thus, the loan satisfied the lending requirements of the Department of Housing and Urban Development ("HUD") and the Fair Housing Administration ("FHA").

In conjunction with this transaction, the Plaintiff executed a promissory note in the amount of $129,222.00 in favor of Wells Fargo. Under the terms of the Note, Plaintiff was to make monthly payments of principle and interest in the amount of $774.75. The loan transaction also called for the Plaintiff to pay into escrow a total of $162.76 for hazard insurance, taxes, and mortgage insurance, which produced a total monthly payment of $937.51.

Pursuant to Plaintiff's prior mortgage with People's Bank, N.A., she paid a monthly payment of $794.00. Prior to the refinance, Plaintiff owed a total of $27,711 in credit card debt. She was obligated to pay an average of $218 for 42 months to Citibank, and an average of $264 for 46 months to Sears. The Plaintiff testified that she was aware of what she paid monthly under her prior mortgage and other debts; and thus, she consolidated this credit card debt into her mortgage through the refinance. By eliminating these credit card payments and including this prior credit card

debt into her new mortgage, she increased her monthly cash flow. Following the refinancing transaction; however, Plaintiff continued to use credit cards, paying only the amount that she could afford to pay each month, and ultimately filed for bankruptcy.

The underwriting and approval for Plaintiff's loan was done by an FHA approved underwriter. Plaintiff also received a credit score of 705 out of 850, which is a favorable credit score according to accepted industry standards and is required for an FHA loan. At the time of the refinance, Plaintiff was current on her mortgage payments, and was also current on her installment debt.

At the time of her refinance, Plaintiff was employed as a patient account representative with Camden Clark Memorial Hospital ("Camden Clark") in Parkersburg, West Virginia. As part of the loan approval process, Wells Fargo verified Plaintiff's employment status and income with Camden Clark, using the FannieMae approved form. On this form, Plaintiff's employer verified, *inter alia*, that Plaintiff was working forty hours a week at $12.63 per hour, that her probability of continued employment was "good," that she was likely to continue receiving overtime pay, that her last pay increase was for 3% on December 23, 2007, and that she was expected to receive a pay increase of up to 4% in December of 2008. Camden Clark also verified Plaintiff's gross earnings for 2006 and 2007 as well as her year-to-date earnings up to November 10, 2008. Although Plaintiff alleges that "[i]n making the loan, Defendant falsified her income to $2,500," it is undisputed that Wells Fargo calculated Plaintiff's income from the figures on the verification form and Plaintiff's W-2s.

In determining whether Plaintiff qualified for the loan, Wells Fargo calculated her income using two methods of calculating qualifying income. First, Wells Fargo determined Plaintiff's

average monthly gross income by averaging her base pay for 2006, 2007, and through November 10, 2008. This calculation produced an average monthly income of $2,529.07. In calculating this average, Wells Fargo did not include Plaintiff's overtime pay or bonuses. Additionally, Wells Fargo used the base pay amounts indicated on Plaintiff's 2006 and 2007 W-2s, which, respectively, were $686.11 and $1,303.42 less than the figures provided on the verification form by her employer.

Second, Wells Fargo determined Plaintiff's average monthly income based solely upon her base pay year-to-date for 2008. This calculation produced an average monthly income of $2,499.91, which was rounded to $2,500.00. Although Wells Fargo was permitted to determine whether Plaintiff qualified for the loan using either calculation, Wells Fargo chose the more conservative of the two numbers.

When Plaintiff signed the Loan Application, she represented that her "Base Empl. Income" was $2,500.00. By signing the loan application, Plaintiff verified the accuracy of this figure and agreed that Wells Fargo could rely on it in determining whether Plaintiff qualified for a loan. Specifically, directly above Plaintiff's signature, the Loan Application stated that:

> [T]he undersigned specifically represents to Lender . . . and agrees and acknowledges that: (1) the Information provided in this application is true and correct as of the date set forth opposite my signature and that any Intentional or negligent misrepresentation of this Information contained in this application may result in civil liability, Including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application . . . .

/s/ Beth E. Moore 11/21/08

## DISCUSSION

Bankruptcy Rule 7056 incorporates the standards set forth in Federal Rule of Civil Procedure 56, which governs when summary judgment is appropriate. That rule provides that summary judgment shall be rendered if the pleadings, discovery, or affidavits submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

**Stipulated Withdrawal**

In paragraph 16(b) of the Complaint, the Plaintiff alleges that "[f]inance charges that were represented to the Plaintiff to be principal, thereby making their interest charges higher than represented." When Plaintiff was being questioned about this allegation, her counsel stipulated that Plaintiff would not be pursuing that allegation. Accordingly, summary judgment is hereby granted as to that allegation.

**Preemption**

Wells Fargo asserts that the Plaintiff's unconscionability claim is barred because this issue has been preempted by the National Bank Act. The issue of preemption as it pertains to West Virginia's consumer protection laws and the National Bank Act has been the subject of multiple recent decisions in both the Southern and Northern Districts of West Virginia. See, Smith v. BAC Home Loans Servicing, LP, 769 F.Supp.2d 1033 (S.D.W.Va. 2011); O'Neal v. Capital One Auto Finance, Inc., 2011 WL 4549148 (N.D.W.Va. 2011); Watkins v. Wells Fargo Home Mortgage, 631 F.Supp.2d 776 (S.D.W.Va. 2008); McCormick v. Wells Fargo Bank, 2009 WL 151588(S.D.W.Va.

2009). The most recent and definitive case to address this issue is Cline v. Bank of America, N.A., 2011 WL 4857934 (S.D.W.Va. 2011), decided October 13, 2011.

In Cline, Judge Copenhaver for the Southern District of West Virginia applied the Dodd-Frank Wall Street Reform and Consumer Protection Act (12 U.S.C. §25b, effective date July 21, 2011) along with its attendant regulations known as the Dodd-Frank Final Rule, the material portion being found at 13 C.F.R. § 7.4008, and found that it was best understood as a clarification of existing law, as opposed to representing a substantive change thereto, such that provisions could be applied in a cause of action brought prior to the Dodd-Frank Act's effective date. Thus, application of the Dodd-Frank Act in the present case is appropriate, and does not work an impermissible retroactive effect.

The relevant portions of the Dodd-Frank Act, state that State consumer financial laws are preempted only if the application of the a State consumer financial law would have a discriminatory effect on national banks, in comparison with the effect of the law on a bank chartered by that state or if the State consumer financial law prevents or significantly interferes with the exercise by the national bank of its powers in accordance with the legal standard for preemption set forth in the decision of the Supreme Court of the United States in Barnett Bank of the Marion County, N.A. v. Nelson, Florida Insurance Commissioner, et.al., 517 U.S. 25, 116 S.Ct. 1103, 134 L.Ed.2d 237 (1996). In the present case there is no allegation of discriminatory treatment by the national bank. Thus, the dispositive question regarding preemption is whether West Virginia's unconscionability laws interfere with the exercise of Wells Fargo's powers under the Barnett standard.

In Cline, Judge Copenhaver summarized the reasoning in Barnett and found that the test to

determine whether provisions of the West Virginia Consumer Credit and Protection Act have been preempted by the National Bank Act is whether the state statutes either (1) impose an obligation on the national bank that was in direct conflict with federal law, or (2) stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. Accordingly, the Court must examine the state law concerning unconscionability and the specific allegations in this case.

Section 46A-2-121 of the West Virginia Code provides, in relevant part:

> With respect to a transaction which is or gives rise to a . . . consumer loan, if the court as a matter of law finds . . . [t]he agreement or transaction to have been unconscionable at the time it was made, or to have been induced by unconscionable conduct, the court may refuse to enforce the agreement.

W. Va. Code § 46A-2-121(1)(a). The Supreme Court of Appeals of West Virginia has established several principles concerning the doctrine of unconscionability:

> [U]nconscionability means overall and gross imbalance, one-sidedness or lop-sidedness that justifies a court's refusal to enforce a contract as written. . . . Unconscionability may be divided into two categories: procedural and substantive. Procedural unconscionability is concerned with the inequities and unfairness in the bargaining process. Substantive unconscionability is involved with determining unfairness in the contract itself.

Drake v. West Virginia Self-Storage, Inc., 203 W. Va. 497, 500, 509 S.E.2d 21, 24 (1998) (citing McGinnis v. Cayton, 173 W. Va. 102, 113-14, 312 S.E.2d 765, 776-77 (1984) (Harshbarger, J., concurring).

7

The specific allegation in the present case is that an unconscionable contract was created when Wells Fargo falsely inflated the Debtor's income on the loan application for the purpose of underwriting a loan that the Debtor would have no ability to repay. Thus, the essential claim rests upon an assertion that West Virginia consumer protection laws prohibit banks from falsely and artificially inflating a borrower's income in order to allow the bank to make a loan that the borrower cannot repay. With respect to the question of whether this provision would be in direct conflict with federal law, the Court is not aware of any federal law that allows banks to falsify the income of borrowers. Therefore, the Court finds that there is no preemption on that basis.

With respect to the question of whether the claim would stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress in passing the National Bank Act, Congress gave national banks general authority to "exercise all such incidental powers as shall be necessary to carry on the business of banking. Cline, supra at 10 (quoting National City Bank of IN v. Turnbaugh, 463 F.3d 325 at 329 (4th Cir. 2006) (quoting 12 U.S.C. § 24)). The Court finds that falsifying income in the loan application process is not an incidental power that is necessary to carry on the business of banking and, therefore, a prohibition on such would not stand as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress in passing the National Bank Act. Thus, the Court finds that the Plaintiff/Defendant's claims of unconscionability in this case are not preempted by the National Bank Act.

**Unconscionability**

The Debtor/Plaintiff contends that "[t]he loan provided the Plaintiff was unconscionable, under all circumstances alleged, at the time it was made and/or was induced by unconscionable conduct, and therefore is unenforceable." The Plaintiff's primary contention concerning this claim is her income was "falsified" to justify a higher loan payment.

As noted above, Section 46A-2-121 of the West Virginia Code provides, in relevant part:

> With respect to a transaction which is or gives rise to a . . . consumer loan, if the court as a matter of law finds . . . [t]he agreement or transaction to have been unconscionable at the time it was made, or to have been induced by unconscionable conduct, the court may refuse to enforce the agreement.

W. Va. Code § 46A-2-121(1)(a). The Supreme Court of Appeals of West Virginia has established several principles concerning the doctrine of unconscionability:

> [U]nconscionability means overall and gross imbalance, one-sidedness or lop-sidedness that justifies a court's refusal to enforce a contract as written. . . . Unconscionability may be divided into two categories: procedural and substantive. Procedural unconscionability is concerned with the inequities and unfairness in the bargaining process. Substantive unconscionability is involved with determining unfairness in the contract itself.

Drake v. West Virginia Self-Storage, Inc., 203 W. Va. 497, 500, 509 S.E.2d 21, 24 (1998) (citing McGinnis v. Cayton, 173 W. Va. 102, 113-14, 312 S.E.2d 765, 776-77 (1984) (Harshbarger, J., concurring)). "The principle of unconscionability is one of the prevention of oppression and unfair surprise and not the disturbance of reasonable allocation of risks or reasonable advantage because

of superior bargaining power or position." Orlando v. Finance One of West Virginia, Inc., 179 W. Va. 447, 450, 369 S.E.2d 882, 885 (1988).

The Plaintiff does not appear to contend that any term of the loan agreement itself is unconscionable. The loan is a FHA-guaranteed loan that is regulated by federal law, and Plaintiff has provided no evidence that the loan did not comply with FHA's underwriting standards. While the claims of substantive unconscionability are not preempted, the fact that the terms of the loan conformed to the federal regulations is relevant in that it is evidence that the loan terms were consistent with the market standards. The Plaintiff has not produced an expert to testify that the underwriting of Plaintiff's loan was inconsistent with industry standards or inconsistent with Federal guidelines.

Further, there is no basis for a substantive unconscionability claim because, on balance, the loan put the Plaintiff in a better financial position than she previously occupied. The Plaintiff received the benefits of lower total monthly debt payments and the satisfaction of her three biggest loans from the proceeds of her mortgage loan. The Plaintiff acknowledges that she was able to pay the Wells Fargo loan for at least a year after she received it. Thus, the Court finds that, under the standard for summary judgement, a claim for substantive unconscionability is not sustainable in this case.

Procedural unconsciousability occurs "in contracts of adhesion when there is an imbalance in bargaining power, absence of meaningful choice, unfair surprise, or sharp or deceptive practices (fine print, legalese disclaimers, or boilerplate clauses on the back of contracts, for examples)." McGinnis v. Cayton, 173 W. Va. 102, 114, 312 S.E.2d 765, 777 (1984) (Harshbarger, J.,

concurring). The Plaintiff is an educated person, with a prior history of being involved in credit transactions, and she has held (and continues to hold) employment involving a number of sophisticated things, such as collections on patient accounts, billing for physician services, and teaching others. It was the Plaintiff's decision to engage Wells Fargo and to ask for a loan. She received the loan that she requested on the terms she requested. In fact, there is no allegation and no evidence that Wells Fargo did anything to induce Plaintiff to enter into the loan.

The Plaintiff's position is that the loan is unconscionable because Wells Fargo should not have taken anything into account other than her November 2008 hourly wage and her net child support income. However, Plaintiff agreed with Wells Fargo's calculation of her income when she signed the November 21, 2008 loan application, and Plaintiff testified that she knew what she was making at the time she signed the November 2008 loan application. Further, Plaintiff acknowledged that she signed the note and that the amount of her monthly payment is disclosed on the face of the Note. Given these circumstances, Plaintiff is not entitled to claim unfair surprise.

Additionally, the evidence presented indicates that the calculation of the Plaintiff's income on her loan application could not be considered to be false. A review of the Plaintiff's loan application process reveals that Wells Fargo handled all aspects of the Plaintiff's transaction within federal guidelines. Wells Fargo explored the various options that HUD has approved for FHA refinance loans and ultimately approved the Plaintiff for the loan she requested because she qualified under HUD's regulations and guidelines. Wells Fargo did not use the highest available figure to qualify the Plaintiff, even though the guidelines allowed it, but instead, chose to rely upon the more conservative calculation of her average monthly income. This calculation was based on

documentation. While compliance with federal regulations is not a basis for preemption in this case it is relevant to the analysis in evaluating the reasonableness of the income calculations. Moreover, the Court finds that the process for calculating income in this case as described in the undisputed statement of facts is a reasonable method independent of the federal regulations. Therefore, the Court finds that claim for procedural unconscionability may not be maintained in this case.

## Conclusion

Based on the foregoing, the Court finds summary judgment in this case is appropriate and is hereby **GRANTED**. Because this order resolves the issues before the Court, the case is hereby closed and the Clerk is directed to remove this proceeding from the active docket.

**IT IS SO ORDERED.**

**ENTERED:**

Ronald G. Pearson, Bankruptcy Judge